## IN THE UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **BARCLAY BUTERA DEVELOPMENT, INC., BARCLAY BUTERA, INC., and BARCLAY BUTERA, individually**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**THE ANNEX, LLC d/b/a HELM HOME and MARIO FERREIRA**<br><br>**Defendants.** | **Civil Action No. _____** |

## PLAINTIFF'S ORIGINAL VERIFIED COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT:

COMES NOW, Plaintiffs Barclay Butera, Inc. ("BBI"), Barclay Butera Development, Inc. ("BBD") and Barclay Butera ("Mr. Butera"), individually (collectively referred to herein as "Plaintiffs") and file this Original Verified Complaint against Defendants The Annex, LLC d/b/a Helm Home ("Helm") and Mario Ferreira ("Mr. Ferreira"), an individual, and in support thereof allege the following:

### I.     NATURE OF THE ACTION

1.     This is an action for trademark infringement, false advertising, and unfair competition pursuant to Section 43(a) of the Lanham Act, 15 U.S.C § 1051 et seq., as well as breach of fiduciary duty, conversion, and fraud. Plaintiff Barclay Butera owns and operates an esteemed interior design firm, Barclay Butera, Inc. (BBI), and has one of his registered trademarks under his company Barclay Butera Development, Inc. (BBD), both based in California. Both Mr.

Butera's name, "Barclay Butera," and the corresponding logo have been lawfully trademarked with the United States Patent and Trademark Office ("USPTO") and are exclusively owned by BBD. Defendant Ferreira was a former employee of Barclay Butera Inc., or BBI, pursuant to a California Employment Agreement, who flagrantly exploited the trademarks during his employment with BBI, without Mr. Butera, BBD, or BBI's consent, to self-deal for himself, and secure work and lucrative deals with other home stagers. Defendant Ferreira's Employment Agreement with BBI, was subject to a confidentiality clause, subject to the Uniform Trade Secret Act (UTSA), and a non-compete clause that could affect or relate to the business of BBI, and that was in effect during his time of employment with the company, and for a period of at least three (3) years thereafter.

2.      It is crucial to acknowledge that Mr. Ferreira enjoyed privileged access to many of BBI's trade secrets, privileged information, and proprietary data during his tenure with BBI. By virtue of his position, he owed a fiduciary duty and an unequivocal obligation of loyalty to BBI, necessitating actions aligned with the company's best interests. It has been demonstrated that Mr. Ferreira and Helm Home deliberately participated in illicit activities, leading to personal financial gain, asset misappropriation, fraudulent behavior, and the unauthorized manipulation and exploitation of Butera's and BBD's esteemed trademarked name. Mr. Ferreira's self-dealing and documented fraudulent actions violated his Employment Agreement with BBI, its confidentiality clause, the Uniform Trade Secret Act (UTSA), and the non-compete clause that has directly affected the business of BBI, not only during his time of employment with the company, but also since then, and covered under the Employment Agreement for a period of at least three (3) years. Mr. Ferreira was terminated by BBI on October 27, 2022.

3.      These actions, as alleged, constitute a violation of Federal Trademark laws, specifically 15 U.S.C. § 1125(a). By wrongfully profiting from Butera's, BBD's, and BBI's assets,

defrauding the company, converting assets to their own names, engaging in acts of self-dealing and breach of fiduciary duties, conspiracy, and engaging in the illicit use of Butera's, BBD's, and BBI's prominent trademarked name and logo, Defendants have contravened legal protections governing trademark rights and have caused substantial harm to Butera's, BBD's, and BBI's business interests.

## II.    PARTIES,

4.      Plaintiff Barclay Butera, Inc. is a California Corporation with its principal office located at 17335 Mt. Wynne Circle, Fountain Valley, California 92708.

5.      Plaintiff Barclay Butera Development, Inc. is a California Corporation with its principal office located at 17335 Mt. Wynne Circle, Fountain Valley, California 92708.

6.      Plaintiff Barclay Butera is an individual with his place of residence Newport Beach, Orange County, California 92663.

7.      Defendant The Annex, LLC d/b/a Helm Home is a Utah limited liability company doing business at 5253 S State St., Murray, Utah 84107, and may be served via its registered agent, The Annex LLC at 5253 S State St., Murray, Utah 84107, or wherever it may be found.

8.      Defendant Mario Ferreira is an individual residing in the State of Utah, and can be served at his residence, at 13609 N. Hillclimb Ln. Kamas UT 84036, or his principal place of business located at 1670 Bonanza Dr., Suite 201, Park City, Utah, or wherever he may be found.

## III.    JURISDICTION, AND VENUE

9.      This is an action for infringement arising under the Lanham Act, 15 U.S.C. §1051, et. seq. Accordingly, this Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1331 and §1338.

10.     This court also has supplemental jurisdiction under 28 U.S.C. §1367(a), to hear Plaintiffs' other causes of actions, all of which are so related that they form part of the same case or controversy under Article III of the United States Constitution.

11.     This Court has personal jurisdiction over the Defendants because Defendant Mario Ferreira was hired by BBI in the State of California and is subject to a California employment agreement which included a confidentiality clause, a Uniform Trade Secrets Act provision, and a three (3) year non-compete clause. Defendant Mario Ferreira was terminated by BBI on October 27, 2022, in Newport Beach, California. Defendant The Annex LLC dba Helm, engaged in conspiratorial acts with Defendant Ferreira, knowing full well that Butera, BBD, and BBI were at all times California corporations, and an individual based in the State of California.  Defendant Ferreira either was engaged for purposes of his employment with BBI in the State of California, went to meetings in California at BBI's principal place of business in the state of California at the time the events giving rise to this cause of action occurred, and Helm conspired and coordinated with Ferreira knowing that Butera, BBD, and BBI were all based in California. This Court has both general and specific jurisdiction over the Defendants.

12.     Venue is proper in the Central District of California pursuant to 28 U.S.C. §1391(b) and (c) because Defendants are subject to the jurisdiction of the Court in this judicial district and thus qualify as a resident of this judicial district under 28 U.S.C. §1391(c)(2). Furthermore, all or a substantial portion of the events giving rise to this claim have occurred and will did occur in the Central District of California.

### IV.  FACTUAL BACKGROUND

**A.    Plaintiff Barclay Butera, Barclay Butera Inc., and Barclay Butera Development, Inc.**

13.     Barclay Butera and the Barclay Butera Brand and group of companies, including BBD and BBI, has established itself as a prominent and respected luxury interior design and lifestyle brand with a rich history spanning over two decades in the State of California and throughout the U.S. Its impeccable craftsmanship and exquisite taste have garnered widespread acclaim. BBI operates from distinguished offices in Fountain Valley, California, Newport Beach, California, Corona del Mar, California, and Park City, Utah, where its designers excel in both primary and secondary home residences.

14.     Recognized as a leader in the industry, Barclay Butera has been featured in reputable publications such as the New York Times, New York Post, Los Angeles Times, Wall Street Journal, Elle Décor, House Beautiful, House & Garden, Luxe, Traditional Home, Veranda, Western Interiors & Design, Esquire, Robb Report, Gilt.com, and ArchitecturalDigest.com.

15.     BBI caters to high-net-worth individuals and maintains strong collaborations with renowned luxury brands, including Tommy Bahama and Lexington Homes. These partnerships showcase Butera and BBI's commitment to delivering excellence in all their projects.

16.     Mr. Butera's visionary leadership has propelled BBI to national prominence. Through his dedication and significant investments, he has meticulously cultivated his name and credentials within the interior design industry, transforming BBI into a household name synonymous with unrivaled expertise and exquisite design.

17.     Leveraging his extensive experience in the fashion industry, Mr. Butera has built a remarkable following and established his brand as a national icon. To protect his unique identity, he has obtained two United States Registered Trademarks, safeguarding the distinct word mark

"Barclay Butera" and an elegant logo featuring a script capital "B" enclosed within a stylish square box, complemented by the iconic "Barclay Butera" text rendered in an artful font. *See* Exhibit 1 (Word Mark) and Exhibit 2 (Design Mark).

     **B.**    **Mario Ferreira and Helm Home.**

18.    Mr. Ferreira served as a trusted senior executive at BBI for over 15 years, responsible for directing and managing BBI's operations in California and spearheading business development in Park City, Utah. *See* Exhibit 3.

19.    During his tenure at BBI, Mr. Ferreira had access to sensitive and proprietary information, including trade secrets, marketing data, customer lists and contracts, supplier details, trademarks and brand information, interior design concepts, design programs, pricing structures, and discount schedules. He also had access to company resources such as computer systems, email accounts, and communication platforms. Mr. Ferreira's Employment Agreement with BBI, contained a confidentiality clause, Uniform Trade Secret Act (UTSA) provision, and a non-compete clause that covered the period during his time of employment with the company, but also for a period of at least three (3) years thereafter. Mr. Ferreira was terminated by BBI on October 27, 2022.

20.    Helm Home, also known as The Annex, LLC, has gained recognition for its curated collection of furniture used in staging residences throughout Utah.

21.    While Mr. Ferreira was in Utah, Mr. Ferreira established a connection with Helm Home, offering them highly sought-after high-end branding services and legitimacy through the use of the Barclay Butera trademarked name. This partnership aimed to showcase Helm Home's interior and staging designs to clients they had previously been unable to reach, while also purportedly promoting the BBI brand in Utah. However, Butera, BBD, and BBI were completely unaware of this supposed partnership between Mr. Ferreira and Helm Home.

22.     While working with Helm Home, and during his time of employment with BBI, Mr. Ferreira shamelessly misappropriated Butera's and BBD's trademarked name and logo, leveraging them without proper authorization or due compensation in a self-serving business relationship with Helm Home and Mr. Chris Ross.

23.     In this supposed partnership, Mr. Ferreira's assisted Helm Home with various aspects of staging proposals, including client procurement, site visits, meticulous design review, submission of proposals, seamless execution, and payment collection. These activities were carried out during BBI's designated working hours, at BBI's expense, and without any legal consent or license to exploit the Butera, BBD, or BBI name. *See* Exhibit 4.

24.     As part of this collaboration, Mr. Ferreira directly engaged with prospective staging clients, using Mr. Butera's name, BBD's logo, and BBI's email platform. He presented himself as the Barclay Butera Director of Business Development. *See* Exhibit 4. Within these correspondences, Mr. Ferreira utilized Butera's and BBD's name, logo, and his position to attach staging or furniture proposals to procure clients for Helm Home, intentionally misleading unsuspecting clients.

25.     All staging proposals sent by Mr. Ferreira through his company email indicated: "Staging Services Provided by: Helm in conjunction with Mario Ferreira at Barclay Butera." *See* Exhibit 4. Furthermore, the Helm Home staging properties falsely claimed that the staging designs would be finalized by Mr. Ferreira, giving the false impression that these proposals had BBI's approval. In reality, these designs were never shown to BBI or Mr. Butera.

26.     Notably, payments associated with these staging proposals were systematically collected by Helm Home through various methods, with Mr. Ferreira actively facilitating the collection and payment process. Significantly, Mr. Ferreira went so far as to request Mr. Chris

Ross, the owner of Helm Home, to promptly notify him of these payments, thereby ensuring that the payments were made exclusively to himself. *See* Exhibit 4. This arrangement effectively prevented BBI from receiving any compensation for these proposals, which were purportedly carried out in conjunction with Helm Home.

27.     On or about October 27, 2022, as a direct consequence of Mr. Ferreira's deplorable conduct, which involved soliciting clients from BBI and engaging in secret collusion with Helm Home through the unauthorized use of BBI's and Mr. Butera's trademarks, his employment with BBI was rightfully terminated.

**C.     Fraud and Unlawful Conversion of Barclay Butera Company's Property and Assets**

28.     On or about August 2016, Mr. Ferreira, as the Vice President of Business Development and an employee of BBI, proposed expanding BBI's business into Park City, UT, by having BBI fund the purchasing of a refundable Social Membership at Park Meadows Country Club.

29.     Recognizing the potential value of the proposal, BBI enthusiastically embraced it and extended a loan of approximately $6,450.00 which included $750.00 for a Refundable Social Membership and a $5,700.00 Special Assessment to partially fund a clubhouse renovation project, to Mr. Ferreira for the explicit purpose of procuring the membership. While the membership was to be held in Mr. Ferreira's name, it was intended to serve the best interests of BBI. From December 1, 2016, through January 1, 2022, BBI paid over $34,499.47 in monthly club membership dues for the Park Meadows Country Club plus other associated expenses that Mr. Ferreira would incur on behalf of, and in the name of BBI. *See* Exhibit 5.

30.     On August 30, 2016, Mr. Ferreira promptly notified Josh Carr, the Membership Services Manager at Park Meadows, of his receipt of final approval from headquarters and

expressed his intention to submit the application along with the required payment. *See* Exhibit 6. Subsequently, on September 1, 2016, Mr. Ferreira confirmed his plans to visit Mr. Carr's office to complete the necessary paperwork and provide the payment, despite his busy schedule.

31.     On August 30, 2016, and again on September 1, 2016, Mr. Ferreira's proposal was approved by BBI, and Mr. Ferreira informed Josh Carr at Park Meadows Country Club that "*I received final approval today* and thereafter "*I received final approval from HQ.*" *See* Exhibit 6. As a result, BBI loaned Mr. Ferreira the amount of $6,450.00 to obtain the refundable Social Membership at Park Meadows Country Club in support of expanding BBI's business in Park City, UT. *See* Exhibit 6. Mr. Ferreira applied for the Social Membership in his name and the name of Mr. DiCola, who is his lifelong partner.

32.     The funding for the membership originated directly from BBI, and both the membership and the loaned funds, along with all the monthly membership dues which exceed $34,499.47, and expenses incurred by Mr. Ferreira, were all paid by BBI and unequivocally considered as BBI's asset. Without BBI's approval, Mr. Ferreira would not have been able to apply, obtain, or pay for the Social Membership.

33.     On or about January 7, 2022, Mr. DiCola submitted a Resigned Membership Resale Price Form, accompanied by Membership Resignation Forms from both Mr. Ferreira and Mr. DiCola, to Mike Councilman, the Director of Membership at Park Meadows. *See* Exhibits 7 and 8.

34.     In accordance with the Club By-Laws, upon resale of the membership, the member retains 80% of the selling price, while the club retains a 20% transfer fee. *See* Exhibit 8.

35.     Subsequently, on or about February 15, 2022, Mr. Ferreira and Mr. DiCola collected a check from Mike Councilman at Park Meadows, in the amount of $100,000 USD. They

knowingly and unlawfully misappropriated and converted the refund from Park Meadows Country Club, totaling $100,000 USD, fully aware of the funds' origin from BBI and that the funds or any appreciation in the club membership belonged to BBI. This was a flagrant violation of Ferreira's obligations to BBI, since he never paid for a single penny of the membership, dues, or expenses.

**V.     CAUSES OF ACTION**

**A.     Count 1: Helm Home Trademark Infringement Pursuant to the Lanham Act, 15 U.S.C. § 1114**

36.     Plaintiffs hereby adopt and reallege each and every allegation previously set forth in this Complaint as if fully set forth herein.

37.     Plaintiffs hold exclusive ownership rights to highly recognizable trademarks, namely the registered word mark "Barclay Butera," with registration number 3,333,369 ("Word Mark"), as well as the distinctive logo consisting of a script capital "B" within a square box, accompanied by the stylized words "Barclay Butera," with registration number 5,457,884 ("Design Mark"). These trademarks are utilized in the context of offering staging services, furnishing proposals, and potentially other related services within the realm of interior design and home goods. *See* Exhibits 1 and 2.

38.     Defendant, Helm Home, has unlawfully appropriated both the Word and Design Marks without obtaining the necessary consent, thus misleading prospective clients and causing potential confusion regarding the affiliation and origin of the services provided. Helm Home has falsely utilized both the Word and Design Marks to assert that the staging designs were finalized by BBI, when, in reality BBI had never been involved in reviewing or endorsing those staging designs.

39.     Defendant, Helm Home, flagrantly employed both marks without authorization from the Plaintiffs, as no license or implied right to use or leverage these marks was ever granted.

40.     By employing marks that are identical or substantially indistinguishable from BBD's, BBI's, and Mr. Butera's Design and Word Marks, Defendant Helm Home, purposefully caused confusion or deception among consumers. The public is led to falsely believe that the services offered by Defendant, marked with a symbol identical to or substantially indistinguishable from BBI's, BBD's and Mr. Butera's Design and Word Marks, originate from an unauthorized source.

41.     Both parties actively advertise and promote their services and goods through the same channels, primarily through proposals.

42.     Both parties operate within the same trade channels and target the same consumer base.

43.     Defendant Helm Home deliberately employed marks that are identical to or substantially indistinguishable from BBD's, BBI's, and Mr. Butera's Design and Word Marks with the intent to confuse or deceive consumers regarding the source of the services offered by Plaintiffs' business.

44.     The actions of the Defendant, Helm Home, constitute trademark infringement, a clear violation of the rights vested in Plaintiffs under Section 32 of the Lanham Act, 15 U.S.C. §1114.

45.     Defendant Helm Home has obtained illicit gains and profits from its infringement of BBD's, BBI's, and Mr. Butera's Design and Word Marks, thereby causing significant damages to the Plaintiffs.

46.     Plaintiffs have invested substantial time and resources in developing the valuable goodwill associated with their Word and Design Marks. This goodwill holds immense worth to Plaintiffs, and they will continue to suffer irreparable harm should the Defendants' trademark

infringement be allowed to persist. In such circumstances, the Plaintiffs have no adequate legal remedy available.

47.    This Court must, therefore, enjoin Defendant Helm Home, from any further use or financial gain obtained through the exploitation of BBD's, BBI's, and Mr. Butera's Design and Word Marks, or any marks that are substantially indistinguishable from them.

48.    Pursuant to 15 U.S.C. §1114 and §1116, the Plaintiffs are entitled to and respectfully request both preliminary and permanent injunctive relief to restrain the Defendant, Helm Home, from infringing on both of the Plaintiffs' trademarks, which includes ceasing the use of any marks substantially similar to the Plaintiffs'.

49.    As a direct consequence of the Defendant, Helm Home's unlawful activities, the Plaintiffs have incurred and will continue to suffer damages, the exact amount of which shall be determined at trial. These damages include, but are not limited to, the loss of Plaintiffs' profits, actual damages sustained, lost profits, treble and exemplary damages attributable to the use of counterfeit marks, attorney's fees and costs, as well as pre- and post-judgment interest. Moreover, the Plaintiffs seek statutory damages under 15 U.S.C. §1117(c) in light of the Defendant Helm Home's utilization of the counterfeit mark.

50.    Defendant Helm Home's acts of trademark infringement have been, and continue to be, deliberate and willful, therefore, warranting an award of enhanced damages.

51.    Defendant Helm Home had access to the Plaintiffs' trademarks through Mr. Ferreira, as these marks are used in connection with the Plaintiffs' interior design services and goods. Despite being aware of the potential infringement, the Defendant decided to exploit the Barclay Butera name and logo without confirming the Plaintiffs' rights or Mr. Ferreira's authority to utilize the trademarks. The Defendant knowingly engaged in unfair competition by adopting

confusingly similar or substantially the same marks as the Plaintiffs'. Defendants knowingly infringed upon the established rights associated with the Plaintiffs' Word and Design Marks.

52.     Plaintiffs are entitled to and seeks a finding that this case is exceptional and warrants an award of attorney's fees pursuant to 15 U.S.C. §1117(a).

## B.     Count 2: Mario Ferreira Trademark Infringement Pursuant to the Lanham Act, 15 U.S.C. § 1114

53.     Plaintiffs hereby adopt and reallege each and every allegation previously set forth in this Complaint as if fully set forth herein.

54.     Plaintiffs hold exclusive ownership rights to the highly recognizable trademarks, namely the registered word mark "Barclay Butera," with registration number 3,333,369 ("Word Mark"), as well as the distinctive logo consisting of a script capital "B" within a square box, accompanied by the stylized words "Barclay Butera," with registration number 5,457,884 ("Design Mark"). These trademarks are utilized in the context of offering staging services, furnishing proposals, and potentially other related services within the realm of interior design and home goods. *See* Exhibits 1 and 2.

55.     Both trademarks have been unlawfully utilized by Mr. Ferreira without obtaining consent, thereby deceiving potential clients and causing confusion regarding the affiliation and origin of the services provided. Mr. Ferreira employed both the Word and Design Marks to falsely represent himself as the BBI Director of Business Development, claiming he would collaborate with Helm Home in staging proposals and finalize the design, intending it to seem like the designs were approved by BBI.

56.     Defendant Mr. Ferreira's use of both the Word and Design Marks was without authorization from Plaintiffs, as there was never a license or implied right granted to use or leverage these marks.

57.     Mr. Ferreira's use of both marks is either identical or substantially indistinguishable from BBD's, BBI's, and Mr. Butera's Design and Word Marks, leading to confusion and deception among the public. By using a mark identical to or substantially indistinguishable from the Design and Word Marks, Mr. Ferreira fraudulently misrepresents himself as the source of services, without authorization from the Defendant, and causing confusion with the public.

58.     Mr. Ferreira intentionally employed a mark that is identical to or substantially indistinguishable from the Design and Word Marks, with the intention of causing confusion or deception regarding the source of the services offered by the Plaintiffs' business.

59.     Mr. Ferreira's actions amount to trademark infringement, violating the Plaintiffs' rights as protected under Section 32 of the Lanham Act, 15 U.S.C. §1114.

60.     Mr. Ferreira has gained unlawful profits and advantages through the infringement of BBD's, BBI's, and Mr. Butera's Design and Word Marks, resulting in damages suffered by the Plaintiffs.

61.     Plaintiffs have invested substantial time and resources in building the goodwill associated with their Word and Design Marks. This goodwill holds significant value for Plaintiffs, and they will continue to experience irreparable harm if Defendants are allowed to continue their trademark infringement. Plaintiffs have no adequate legal remedy to address this situation.

62.     This Court must, therefore, enjoin Mr. Ferreira from any further use or financial gain derived from BBD's, BBI's, and Mr. Butera's Design and Word Marks, or marks that are substantially indistinguishable from them.

63.     Pursuant to 15 U.S.C. §1114 and §1116, Plaintiffs are entitled to and respectfully request both preliminary and permanent injunctive relief to restrain Mr. Ferreira from infringing

on both of the Plaintiffs' trademarks, including any and all use of marks substantially similar to those of the Defendants.

64.     As a direct consequence of Mr. Ferreira's unlawful activities, the Plaintiffs have suffered and will continue to suffer damages, the exact amount of which will be determined at trial. These damages include, but are not limited to, the Plaintiffs' profits and the actual damages incurred, lost profits, treble and exemplary damages resulting from the use of counterfeit marks, attorney's fees and costs, as well as pre- and post-judgment interest. Additionally, the Plaintiffs seek statutory damages under 15 U.S.C. §1117(c) due to Mr. Ferreira's use of the counterfeit mark.

65.     Defendant Mr. Ferreira's acts of trademark infringement have been, and continue to be, deliberate and willful, therefore, warranting an award of enhanced damages.

66.     Mr. Ferreira had access to the Plaintiffs' confidential proprietary trade secrets and both trademarks in connection with Plaintiffs' services and goods. Upon the termination of his business and employment relationship with Plaintiffs, Mr. Ferreira intentionally continued to use the Barclay Butera name and logo. He proceeded to engage in direct and unfair competition with Plaintiffs by adopting confusingly similar or substantially the same marks, and also in direct violation of his employment agreement. Despite being aware that such use would infringe upon Plaintiffs' established rights in their Word and Design Marks, Mr. Ferreira knowingly adopted these marks.

67.     Plaintiffs are entitled to and seeks a finding that this case is exceptional and warrants an award of attorney's fees pursuant to 15 U.S.C. §1117(a).

   **C.     Count 3: False Advertising by Helm Home under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)**

68.     Plaintiffs hereby adopt and reallege each and every allegation previously set forth in this Complaint as if fully set forth herein.

69.     To establish a claim under 15 U.S.C. §1125(a), sometimes referred to as "false advertising," a plaintiff must prove "(1) the defendant made a false statement about either the plaintiff's or its own product; (2) the statement was made in a commercial advertising or promotion; (3) the statement actually deceived or had the tendency to deceive a substantial segment of its audience; (4) the deception is material; (5) the defendant caused its false statement to enter interstate commerce; and (6) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant, or by a lessening of goodwill associated with the plaintiff's product.

70.     Defendant Helm Home utilized Mr. Butera's Word Mark to advertise to consumers nationwide that their staging designs and proposals were made in conjunction with and finalized by BBD, BBI, and Mr. Butera.

71.     Defendant made false or misleading statements of fact in a commercial advertisement or promotion for their staging design services, targeting high-end homes in Utah.

72.     Defendant intentionally utilized Mr. Butera's Word Mark to divert consumers, encouraging them to purchase furniture from Defendant or engage their services as a home stager, rather than choosing Plaintiffs. The claim of being "in conjunction with… Barclay Butera" is false and misleading to consumers, who believe that Defendant's staging designs and proposals have received approval from Butera. Defendant engaged in unfair competition using Plaintiffs' own name.

73.     The misleading claim of being "in conjunction with… Barclay Butera" deceives or is likely to deceive the public in a significant way, leading them to believe that Defendant's staging designs and proposals are endorsed and acclaimed by Mr. Butera. This is likely to influence the

public's decision to purchase furniture or utilize staging services from Defendant instead of Plaintiffs, causing harm to Plaintiffs.

74.     Defendant's deliberate misrepresentation is fraudulent and deceives the public. These deceptive and fraudulent statements of fact have resulted in, or are likely to result in, competitive or commercial harm to Plaintiffs.

75.     Defendant's actions have caused Plaintiffs to suffer monetary damages, the exact amount of which will be determined at trial.

76.     Defendant's actions have also caused irreparable harm to Plaintiffs. This harm will persist unless the Court grants an injunction prohibiting further violations of Plaintiffs' rights, as the Plaintiffs have no adequate legal remedy to address the situation.

### D.     Count 4: Common Law Trademark Infringement

77.     Plaintiffs hereby adopt and reallege each and every allegation previously set forth in this Complaint as if fully set forth herein.

78.     Plaintiffs hold common law rights in both the Word and Design Marks, as these marks are eligible for protection and Plaintiffs have established themselves as the senior user of these marks in relation to their interior design services and goods.

79.     As the prior senior user of the Word and Design Marks, Plaintiffs possess superior rights compared to Defendants, who are junior users, to utilize the Word and Design Marks. Plaintiffs are renowned for offering high-quality services and goods in the staging of high-end homes, and they have cultivated a reputation associated with both the Design and Word Marks.

80.     Consumers associate BBD's, BBI's, and Mr. Butera's Design and Word Marks with the goods and services provided by Plaintiffs. BBD, BBI, and Butera is a well-known nationwide interior design firm, sought after by selective customers.

81.    Defendants' use of identical Word and Design Marks to provide services and goods for staging high-end homes in this state and across the United States has led to, and is likely to cause, confusion regarding the origin of these goods and services. Customers of Plaintiffs' services and goods are prone to mistakenly associate or have associated such services and goods as originating from Defendants, causing significant harm to Plaintiffs.

82.    Defendants' acts as described above constitute, *inter alia,* common law infringement of Plaintiffs' Word and Design Marks, resulting in irreparable injury to Plaintiffs.

83.    Defendants' infringement has caused damage to Plaintiffs, the extent of which will be determined at trial. This includes, but is not limited to, Defendants' profits and the actual damages sustained by Plaintiffs, lost profits, treble and exemplary damages for the use of a counterfeit mark, attorneys' fees and costs, as well as pre- and post-judgment interest.

84.    Defendants' infringement has caused, and unless the Court intervenes, will continue to cause irreparable harm to Plaintiffs' goodwill and reputation. This Court must enjoin any further use of both the Word and Design Marks, or any substantially indistinguishable mark, by Defendants in their marketing of their brand and services.

### E.    Count 5: Unfair Competition

85.    Plaintiffs hereby adopt and reallege each and every allegation previously set forth in this Complaint as if fully set forth herein.

86.    Unfair competition is any unlawful, unfair, or fraudulent business act or practice. CAL. BUS. & PROF. CODE §17200.

87.    Defendants' actions unfairly compete with Plaintiffs by generating confusion among the purchasing public. This confusion has resulted in unjust enrichment for Defendants, to the detriment and harm of Plaintiffs.

88.     Plaintiffs have devoted extensive time, labor, skill, and financial resources to the creation, advertisement, and operation of their interior staging and furniture business. Through these efforts, they have built a sustainable customer base.

89.     Plaintiffs conduct business with consumers and potential customers across the nation, and Defendants target a similar nationwide customer base with their advertising of services and goods. However, by using BBD's, BBI's, and Mr. Butera's Design and Word Marks in their advertising, Defendants are infringing upon Plaintiffs' trademark rights and protections. Both parties operate within the same channels of trade and target the same customer base.

90.     Defendants' use of the Word and Design Marks is highly likely to cause confusion, mistake, or deception among the public regarding any affiliation, sponsorship, or approval by Plaintiffs of Defendants' products.

91.     Defendants' unfair competition has inflicted damages upon Plaintiffs, the exact amount of which is yet to be determined. Plaintiffs seek the disgorgement of Defendants' profits, actual damages, costs incurred in this legal action, and any additional appropriate relief as deemed fit by this Court.

92.     Defendants have appropriated Plaintiffs' name and services as their own, without expending significant time, labor, skill, or financial resources. This has created a false impression among the relevant consumer base seeking high-end furniture and home staging. Mr. Ferreira, a former executive of BBI, actively facilitated the use of BBD's, BBI's, and Mr. Butera's intellectual property, specifically the Word and Design Marks, with Helm Home for marketing purposes, targeting consumers that they were previously unable to reach.

93.     Plaintiffs have invested substantial time and resources into cultivating the goodwill associated with the Word and Design Marks. This goodwill holds significant value for Plaintiffs,

and if the unfair competition by Defendants is allowed to persist, Plaintiffs will continue to suffer irreparable harm.

94.     By Defendants Helm Home's and Mr. Ferreira's act of reaping a benefit from Plaintiff's work, Plaintiff has suffered financial damages.

F.     **Count 6: Conversion of BBI's Property and Assets**

95.     Plaintiffs hereby adopt and reallege each and every allegation previously set forth in this Complaint as if fully set forth herein.

96.     The elements for conversion are (1) the plaintiff's ownership right to possession of the property at the time of the conversion; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages.

97.     Defendant Mr. Ferreira, without consent, unlawfully utilized BBI's, BBD's, and Butera's trademarked name in communications with potential staging clients, within his business relationship with Helm Home and Chris Ross. By unauthorized use of BBI's, BBD's, and Butera's trademark, he wrongfully appropriated and exploited BBI's, BBD's, and Butera's intellectual property for personal gain.

98.     Furthermore, Mr. Ferreira orchestrated a scheme whereby he directed staging clients to make payments to Helm Home, a company with which he had a business association. He then arranged for direct payment from Helm Home to himself, without disclosing or sharing any compensation with BBI, BBD, or Butera. This diversion of funds, not authorized by BBI, BBD, or Butera, constitutes a conversion of the company's assets for personal benefit.

99.     Additionally, Mr. Ferreira obtained a loan of $6,450 from BBI specifically designated for the purchase of a Social Membership at Park Meadows Country Club. However, he later deceitfully and unlawfully converted the loan and all of the membership appreciation, dues and expenses paid for him on behalf of the company and obtained a $100,000 refund received from

the club for his and Mr. DiCola's personal benefit. Mr. Ferreira was aware that these funds originated from BBI and were owed to BBI, including any increased appreciation in the membership value. This conversion of BBI's funds and property for personal gain serves as further evidence of Mr. Ferreira's misconduct of conversion.

100.    Plaintiffs have suffered harm as a result of Mr. Ferreira's conversion of the trademarks and misappropriation of BBI's funds and assets.

G.    **Count 7: Mario Ferreira's Breach of Fiduciary Duty**

101.    Plaintiffs hereby adopt and reallege each and every allegation previously set forth in this Complaint as if fully set forth herein.

102.    Defendant Ferreira has breached his fiduciary duty to Plaintiff, both individually and on behalf of BBI. The elements of a cause of action for breach of fiduciary duty are that a plaintiff must allege: (a) the existence of a fiduciary duty owed by the defendant to the plaintiff; (b) a breach of that duty; and (c) damages proximately caused by the breach.

103.    Corporate officers and directors are prohibited from leveraging their position of trust and confidence for personal gain. Although not technically trustees, they assume a fiduciary role towards the corporation. Mr. Ferreira, as an executive officer of BBI, owed fiduciary duties, including a duty of loyalty, to BBI.

104.    Corporate officers and directors are held to the highest standards of honesty, selflessness, and good faith in any transaction involving self-interest. An officer of a limited liability company must disclose all relevant information pertaining to any contract negotiated with the company in which the officer has a personal interest.

105.    Throughout his employment with BBI, Mr. Ferreira wrongfully utilized BBD's, BBI's, and Butera's trade secrets, proprietary information, and trademarked name without authorization. He exploited these valuable resources for personal gain within his business

relationship with Helm Home and Mr. Chris Ross, without disclosing his actions or compensating BBD, BBI, or Butera for the use of its assets.

106.     Mr. Ferreira deceitfully portrayed himself as the Barclay Butera Director of Business Development in communications with potential staging clients. He manipulated BBI's name, his position within BBI, and BBI's email and logo to create a false impression that he was acting on behalf of BBI in his interactions with customers.

107.     Moreover, Mr. Ferreira's deception of presenting himself as the Barclay Butera Director of Business Development was to mislead others into believing that he was representing BBI's interests when engaging with Helm Home.

108.     Defendant Mr. Ferreira consistently engaged in conduct that undermined Plaintiffs' legitimate expectations. Plaintiffs reasonably anticipated that Defendant would work to expand BBI's business. Instead, Defendant Mr. Ferreira exploited BBI's name and reputation for his own benefit, diverting both funds and customers away from Plaintiffs, all in violation of his employment agreement, which contained a confidentiality clause, Uniform Trade Secret Act provision, and non-compete provision during and after his employment with BBI.

109.     These actions demonstrate a clear breach of Mr. Ferreira's fiduciary duty to act in the best interests of BBI, prioritize the company's interests over personal gain, and maintain transparency and loyalty in his business dealings.

### H.     Count 8: Helm Home's Conspiracy to Commit Breach of Fiduciary Duty

110.     Plaintiffs hereby adopt and reallege each and every allegation previously set forth in this Complaint as if fully set forth herein.

111.     The threshold requirement for a civil conspiracy is the formation of a conspiracy by two or more persons who have agreed on a common plan to commit a tortious act. *Kidron v. Movie Acquisition Corp.* (1995) 40 Cal.App.4th 1571, 1582.

112.    Defendants Helm Home and Mr. Ferreira collaborated as part of a group comprising two or more individuals. The circumstantial evidence clearly demonstrates that Defendants reached an agreement during Mr. Ferreira's employment with BBI, with the objective of unlawfully infringing upon the Word and Design Marks for the benefit of Helm Home. Additionally, they planned to engage in various forms of unfair competition. In other words, Helm Home conspired with Mr. Ferreira to breach his fiduciary duty to BBI by actively participating in and gaining advantages from his wrongful conduct.

113.    It remains undisputed that Helm Home possessed knowledge of Mr. Ferreira's relationship with BBI and his responsibilities to manage and develop the principal's business. Helm Home was fully aware that Mr. Ferreira was unlawfully exploiting BBD's, BBI's, and Butera's trademarked name for personal gain. Moreover, Helm Home was aware that Mr. Ferreira was acting on behalf of BBI during the expansion of BBI's business in Park City, Utah.

114.    Despite possessing this knowledge, Helm Home intentionally established a business relationship with Mr. Ferreira, utilizing his position at BBI to further their own interests. Instead of forming a legitimate partnership with BBI, as other prominent national home styling, decor, and interior design companies would have done, Helm Home sought to exploit BBI's executive employee to undermine BBI's brand.

115.    Helm Home actively collaborated with Mr. Ferreira in preparing staging proposals, furniture sales proposals, and undertaking home design projects, capitalizing on BBI's trademarks and association with Barclay Butera. They willingly engaged in joint proposals, client communications, and secretive payment arrangements with Mr. Ferreira, knowing full well of their illicit actions. This collaboration directly benefitted Helm Home by leveraging BBI's esteemed reputation and brand recognition, for their own self-dealing, and conspiracy with Ferreira.

116.    In a covert alliance with Mr. Ferreira, Helm Home deceitfully portrayed itself as an authorized provider of BBI's design services. Helm Home sought to benefit from the prestige of the Butera, BBD, and BBI brand without making any investments or assuming obligations. Helm Home was fully aware that Mr. Ferreira was not acting in BBI's best interests, yet they nurtured his abilities with the intention of illegally undermining BBI in Utah.

117.    As a result of their collaboration, Helm Home derived financial gains from Mr. Ferreira's activities. They received payments from staging clients, furniture sales, and other activities facilitated by Mr. Ferreira's involvement and coordination, all while neglecting to report or compensate BBI for the utilization of BBI's resources. Helm Home knowingly and willingly participated in this scheme to divert funds and gain an unfair advantage.

118.    Helm Home actively participated in the planning, execution, and completion of staging projects and furniture proposals, with Mr. Ferreira providing direct input and assistance. Helm Home relied on Mr. Ferreira's expertise and position at BBI to acquire clients, conduct site visits, evaluate designs, submit proposals, and ensure timely payments. Helm Home's active engagement in these activities clearly demonstrates their collusion with Mr. Ferreira to breach his fiduciary duty to BBI.

119.    Helm Home conspired with Mr. Ferreira to breach his fiduciary duty to BBI, actively participating in and benefiting from his wrongful conduct. They possessed knowledge of his misuse of BBI's resources, collaborated with him on staging projects that utilized BBI's trademarked name, and gained financial advantages through the diversion of funds. This collaborative effort and active involvement in breaching Mr. Ferreira's fiduciary duty underscore Helm Home's complicity in the wrongdoing.

120.    As a direct consequence of Defendants' actions, Plaintiffs have endured and will continue to suffer damages.

I.    **Count 9: False Designation of Origin**

121.    Plaintiffs hereby adopt and reallege each and every allegation previously set forth in this Complaint as if fully set forth herein.

122.    Defendants have engaged in the infringing use of the Word and Design Marks in connection with their services, thereby falsely designating and misrepresenting the origin, sponsorship, or approval of said services.

123.    To state a claim for false designation of goods and services under the Lanham Act, a plaintiff must show that a defendant made a false designation of origin, false or misleading description of fact, or false or misleading representation of fact that is likely to cause confusion or mistake as to its affiliation, sponsorship, or origin. 15 U.S.C. § 1125(a)(1)(A).

124.    Pursuant to 15 U.S.C. §1125(a), such actions are likely to cause confusion or mistake and have indeed led to the confusion and deception of potential and actual customers who now believe that Defendant Helm Home's services are affiliated with, sponsored by, or connected to Butera, BBD, or BBI.

125.    With the knowledge and active involvement of Helm Home, Mr. Ferreira unlawfully exploited Butera's, BBD's, and BBI's trademarked name without authorization. He employed Butera's, BBD's, and BBI's trademarks and Mr. Butera's name when communicating with prospective staging clients, deceptively portraying himself as the Barclay Butera Director of Business Development. This unauthorized usage of the trademark created a false association between Butera and BBI, and the business activities carried out by Mr. Ferreira and Helm Home.

126.     In their communications and interactions with clients, Mr. Ferreira and Helm Home intentionally fostered a misleading impression of affiliation and association with BBI. By utilizing BBD's and Mr. Butera's trademarks, Mr. Ferreira falsely implied a connection between his role at BBI and the staging proposals being offered through Helm Home. This misrepresentation led clients to believe that Butera or BBI endorsed or were involved in the projects, whereas in reality, no legitimate affiliation existed.

127.     Mr. Ferreira's utilization of BBD's and Mr. Butera's trademarks, coupled with the reference to Helm Home in their advertising to staging clients' homes, further perpetuated the false designation of origin. By associating BBD's and Butera's brand with Helm Home's services, they created a misleading representation of the nature, characteristics, and qualities of the goods and services being provided. This deceptive advertising and promotion misled clients and misrepresented the true origin of the offerings.

128.     Defendants continued use of the Word and Design Marks causes a high likelihood of deception and confusion to actual and potential consumers in a manner that significantly influences their decision to utilize the services offered by BBI or by Helm Home.

129.     The actions of Helm Home and Mr. Ferreira potentially tarnished and blurred the distinctiveness and reputation of BBD's and Mr. Butera's trademarks. Through unauthorized usage and association with unrelated business activities, they jeopardized the value and impact of the marks, thereby further contributing to the false designation of origin and potential harm to BBI's, BBD's, and Butera's brand reputation.

130.     Helm Home and Mr. Ferreira engaged in the false designation of origin by deceptively utilizing BBD's and Mr. Butera's trademarks and establishing a false association

between BBI and their business activities. Consequently, confusion and deception arose concerning the true origin and affiliation of the goods and services being offered.

131.    As a direct and proximate result of Defendants' actions, BBD, BBI, and Butera have suffered and will continue to suffer damages, including damages to its goodwill and reputation.

**J.      Count 10: Appropriation of Name or Likeness**

132.    Plaintiffs hereby adopt and reallege each and every allegation previously set forth in this Complaint as if fully set forth herein.

133.    Helm Home and Mr. Ferreira have wrongfully appropriated Barclay Butera's name and likeness without authorization or consent, solely for their own benefit. Defendants are exploiting and utilizing Plaintiff's name and likeness, capitalizing on its value. Specifically, Mr. Ferreira's current email signature block and Helm Home's staging designs and proposals prominently feature Mr. Butera's name.

134.    In collaboration, Mr. Ferreira and Helm Home deliberately employed Barclay Butera's name without permission. In their communications with potential staging clients, Mr. Ferreira presented himself as the Barclay Butera Director of Business Development, misleadingly implying that he still held an executive position within BBI. By utilizing Barclay Butera's name in this manner, they appropriated the name to enhance their credibility and deceive clients.

135.    Through the association of Mr. Ferreira's role at Helm Home with Barclay Butera's name, Helm Home and Mr. Ferreira falsely conveyed a connection between the two entities. This misrepresentation led clients to believe in the existence of a legitimate partnership or collaboration between Helm Home and Barclay Butera, when in reality, no such affiliation existed. This appropriation of Barclay Butera's name created a deceptive association and misled clients.

136.    Helm Home and Mr. Ferreira intended to exploit the reputation and goodwill associated with Barclay Butera's name by wrongfully appropriating it, potentially including his likeness. By falsely aligning themselves with Barclay Butera, they aimed to benefit from the recognition and credibility associated with the established brand.

137.    Furthermore, Helm Home and Mr. Ferreira engaged in the unauthorized use and appropriation of Barclay Butera's name and potentially his likeness. Through their wrongful act of appropriation, they misrepresented their affiliation, potentially exploited the reputation and goodwill associated with Barclay Butera's name and sought personal benefits through the unauthorized utilization of his identity.

138.    Defendants obtained an advantage or benefit through this appropriation, which is that Helm Home is connected or affiliated with a well-known nationwide interior design firm, BBI, that Defendants utilized for promotion. Furthermore, Defendants have ventured into the same business and are directly competing with Plaintiffs, all while exploiting Mr. Butera's name and likeness to market their home staging services.

139.    Plaintiff BBI has suffered a significant decline in the sales of their staging services, furniture sales, and interior design services, directly resulting from Defendants' exploitation of Mr. Butera's name.

140.    Defendants' actions have caused monetary damages to Plaintiff Mr. Butera, BBI, and BBD, the exact amount of which will be determined during the trial.

141.    Additionally, Plaintiffs have endured irreparable harm due to Defendants' misappropriation, for which there is no adequate remedy available through legal means alone. Unless Defendants are restrained by this Court from further violating Plaintiffs' rights, the ongoing irreparable injury will continue to inflict damage upon Plaintiffs.

## VI.   DAMAGES & ATTORNEYS' FEES

142.   Plaintiffs seek to recover their actual, consequential, and statutory damages in this suit, in an amount within the jurisdictional limits of this Court. Plaintiffs seek exemplary damages against Defendants as Defendants' actions were committed with malice, fraudulently, deliberately, and willfully pursuant to 15 U.S.C. § 1117.

## VII.   CONDITIONS PRECEDENT

143.   All conditions precedent to maintaining these causes of action have been performed or have otherwise occurred.

## VIII.   JURY DEMAND

144.   Plaintiffs respectfully demand the right to have a trial by jury and hereby tender the appropriate jury fee to the district Clerk of Court for the U.S. District Court for the Central District of California.

## IX.   PRAYER

145.   For these reasons, Plaintiffs ask that the Court issue citation for Defendants to appear and answer, and that Plaintiffs be awarded judgment against Defendants for the following:

1.   Actual, consequential, incidental, statutory and exemplary damages, as allowed by law;

2.   Pre-judgment and post-judgment interest;

3.   Reasonable attorneys' fees and costs of court;

4.   All other relief, including equitable relief, and to which Plaintiffs may show themselves to be entitled to, in law or in equity.

DATED:   June 21, 2023                    Respectfully submitted,

                                          THE VETHAN LAW FIRM, PC

By: /s/ *Charles M. R. Vethan*
Charles M. R. Vethan
Attorney-in-Charge
Texas Bar No.  00791852
Joseph L. Lanza
Texas Bar No. 00784447
Two Memorial City Plaza
820 Gessner, Suite 1510
Houston, Texas 77024
Tel: (713) 526-2222
Fax: (713) 526-2230
Email: edocs@vethanlaw.com

**Attorneys for Plaintiffs**