JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| BARCLAY BUTERA DEVELOPMENT INC., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>THE ANNEX, LLC D/B/A HELM HOME, *et al.*,<br><br>Defendants. | Case No.: SACV 23-01139-CJC (KESx)<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS PLAINTIFFS' COMPLAINT FOR LACK OF PERSONAL JURISDICTION [Dkts. 21, 23] AND TRANSFERRING ACTION TO THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH |

## I. INTRODUCTION & BACKGROUND

Plaintiffs Barclay Butera Development Inc., Barclay Butera, Inc., and Barclay Butera (collectively "Barclay Butera") bring this action against Defendants The Annex, LLC doing business as Helm Home ("Helm Home") and Mario Ferreira for trademark infringement, false advertising, unfair competition, breach of fiduciary duty, conversion, and fraud. (*See* Dkt. 1 [Complaint].) Butera, a California resident, owns and operates Barclay Butera, Inc., an interior design firm, and Barclay Butera Development, Inc., both companies with their principal place of business in California. (Compl. at ¶¶ 1, 4–6.) Plaintiffs allege Helm Home is a Utah limited liability company doing business in Utah, "which has gained recognition for its curated collection of furniture used in staging residences throughout Utah." (*Id.* ¶¶ 7, 20.) Plaintiffs allege Ferreira resides and has a principal place of business in Utah. (*Id.* ¶ 8.)

The thrust of Plaintiffs' complaint is that Ferreira, while employed by Barclay Butera as a "trusted senior executive responsible for directing and managing BBI's operations in California and spearheading business development in Park City Utah," went behind Barclay Butera's back to use Barclay Butera's brand to help Helm Home at Barclay Butera's expense. (*Id.* ¶ 18, 21–26.) Plaintiffs also allege that Ferreira wrongfully collected a $100,000 refund associated with a country club membership in Utah for Ferreira and his partner that was purportedly paid for by Barclay Butera. (Id. ¶¶ 28–35.)

Plaintiffs allege the Court has personal jurisdiction, both general and specific, over the Defendants because Ferreira "was hired by BBI in the State of California and is subject to a California employment agreement which included a confidentiality clause, a Uniform Trade Secrets Act provision, and a three (3) year non-compete clause." (*Id.*

¶ 11.) Ferreira "was engaged for purposes of his employment with BBI in the State of California" and "went to meetings in California at BBI's principal place of business in the state of California at the time the events giving rise to this cause of action occurred." (*Id.*) Helm Home allegedly "conspired and coordinated with Ferreira knowing that Butera, BBD, and BBI were all based in California." (*Id.*)

Now before the Court is Ferreira's motion to dismiss under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction or in the alternative transfer venue, (Dkt. 21 [Memorandum, hereinafter "Ferreira Mot."]), and Helm Home's motion to dismiss under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, (Dkt. 23 [Memorandum, hereinafter "Helm Home Mot."]  For the following reasons, Defendants' motions are **GRANTED IN PART** to the extent they challenge personal jurisdiction but, in the interests of justice, this action is **TRANSFERRED** to the United States District Court for the District of Utah in lieu of dismissal.  Defendants' motions are **DENIED AS MOOT** in their other respects.[1]

## II.   LEGAL STANDARD

A party may move to dismiss an action for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).  In determining the bounds of their personal jurisdiction, "[f]ederal courts ordinarily follow state law."  *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014).  Because California's long-arm statute "allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution," the Court need only analyze whether personal jurisdiction over Defendant comports with constitutional due process.  *Id*.

---

[1] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing.  *See* Fed. R. Civ. P. 78; Local Rule 7-15.  Accordingly, the hearing set for September 18, 2023, at 1:30 p.m. is hereby vacated and off calendar.

Constitutional due process concerns are satisfied when a nonresident defendant has "certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Doe v. Unocal Corp.*, 248 F.3d 915, 923 (9th Cir. 2001) (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)). Under the minimum contacts analysis, personal jurisdiction may be either general or specific. *Id.* General jurisdiction "permits a court to hear 'any and all claims' against a defendant, whether or not the conduct at issue has any connection to the forum [state]." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015). A court may exercise general jurisdiction over an out-of-state defendant when that defendant's "affiliations with the State are so 'continuous and systematic' as to render [the defendant] essentially at home [there]." *Id.* at 125. Specific jurisdiction requires that the defendant's suit-related conduct create a substantial connection with the forum State. *See Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1022–23 (9th Cir. 2017); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–16 (1984). A defendant cannot be "haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (cleaned up).

"When a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction." *In re W. Sts. Wholesale Gas Antitrust Litig.*, 715 F.3d 716, 741 (9th Cir. 2013). That burden varies according to the nature of the pretrial proceeding during which the defendant raises the jurisdictional issue. *See Data Disc, Inc. v. Sys. Tech. Assocs., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). If "the defendant's motion is based on written materials rather than an evidentiary hearing, 'the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss.'" *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1073 (9th Cir. 2011) (citation omitted). "The plaintiff cannot 'simply rest on the bare allegations of its complaint,' but uncontroverted allegations in the complaint must be taken as true." *Id.* (citation omitted).

## III. DISCUSSION

Ferreira argues that the Court lacks general personal jurisdiction over him because he is a resident of Utah, where he has lived and worked for the last nineteen years. (Ferreira Mot. at 4.)  He has never lived or owned real property in California.  (*Id.*) "Essentially, Ferreira's only connection to the State of California is that he was previous[ly] employed by Plaintiff, a company incorporated in California, which occasionally required his presence there."  Ferreira argues that the Court lacks specific personal jurisdiction over him because his alleged actions took place entirely in Utah and dealt only with Utah entities.  (*Id.* at 5–7.)  Similarly, Helm Home argues that the Court lacks general personal jurisdiction over it because it "does not have employes, properties, or business operations in California," nor does it direct its business towards California. (Helm Home Mot. at 6.)  Helm Home argues that the Court lacks specific personal jurisdiction over it because all its alleged conduct took place in Utah, involved individuals in Utah, and was in no way directed at California.  (*Id.* at 8–10.)  In opposition, Plaintiffs state the following in support of their claim that this Court has personal jurisdiction over Defendants:  "Plaintiffs believe that the Court possesses personal Jurisdiction over the Defendants . . . Although Plaintiffs maintain that the jurisdictional requirements are met, they also recognize that this dispute has the potential to be resolved more expediently in the District of Utah, where Defendant Helm Home is based and where Defendant Mario Ferreira has substantial connections."  (Opp. at 4–5.) Outside of those two conclusory statements, Plaintiffs offer nothing further in support of their burden to demonstrate that the Court has personal jurisdiction over Defendants.  *See In re W. Sts. Wholesale Gas Antitrust Litig.*, 715 F.3d at 741.  Plaintiffs spend the remainder of their opposition arguing transfer is appropriate in the interests of justice. (*See* Opp. at 4–6.)

### A. General Jurisdiction

Plaintiffs offer no argument as to why this Court has general personal jurisdiction over Ferreira, a longtime resident of Utah who has only infrequently visited California, or Helm Home, a Utah business with no ties to California. Employment by a California company alone does not establish general personal jurisdiction over a non-resident employee. *See LeDuc v. Kentucky Cent. Life Ins. Co.*, 814 F. Supp. 820, 824 (N.D. Cal. 1992). And "courts have general jurisdiction over a foreign corporation only if the corporation's connections to the forum state 'are so continuous and systematic as to render [it] essentially at home in the forum State.'" *Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015, 1020 (9th Cir. 2017) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 9119 (2011)) (alterations in original). "[I]n the paradigmatic circumstances for exercising general jurisdiction, the corporate defendant is incorporated or has its principal place of business in the forum state." *Williams*, 851 F.3d at 1020. Plaintiffs have not carried their burden to demonstrate general personal jurisdiction.

## B. Specific Jurisdiction

Courts employ a three-part test to determine whether a defendant has sufficient contacts with the forum state to be subject to specific personal jurisdiction: (1) the non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof, (2) the claim must be one which arises out of or relates to the defendant's forum-related activities, and (3) the exercise of jurisdiction must comport with fair play and substantial justice. *See Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015). The plaintiff has the burden of proving the first two prongs. *See CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011). If the plaintiff carries that burden, "the burden shifts to the defendant to set forth a compelling case that the exercise of jurisdiction would not be reasonable." *Picot*, 780 F.3d at 1212.

"The first prong of the specific jurisdiction test refers to both purposeful direction and purposeful availment." *Mavrix Photo Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1228 (9th Cir. 2011). In cases involving tortious conduct such as trademark infringement, courts typically employ the purposeful direction analysis. *See Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1321 (9th Cir. 1998). In the Ninth Circuit, the purposeful direction analysis is governed by a three-part "effects test" derived from *Calder v. Jones*, 465 U.S. 783 (1984). *See Picot*, 780 F.3d at 1213–14. Under the effects test, "the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 803 (9th Cir. 2004) (quoting *Dole Food Co. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002)).

### 1. Intentional Act

Plaintiffs' complaint alleges that Ferreira committed an intentional act.[2] Ferreira allegedly went behind Plaintiffs' back to work with Helm Home at Plaintiffs' expense. (Compl. ¶¶ 21–26.) Ferreira seems to concede that, at a minimum, he worked with Helm Home by staging homes. (Ferreira Opp. at 6.) For similar reasons, Plaintiffs allege that Helm Home committed an intentional act by working with Ferreira to stage homes. (Compl. ¶¶ 21–28.) Therefore, for the purpose of the present motions, the Court assumes the first prong of the *Calder* test is satisfied.

### 2. Express Aiming

Plaintiffs "must also show that [Defendant] 'expressly aimed' its intentional act . . . at California." *Schwarzenegger*, 374 F.3d at 806. This inquiry "focus[es] . . . on defendant's intentional conduct that is aimed at, and creates the necessary contacts with, the forum state." *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1209 (9th Cir. 2020).

Plaintiffs' complaint asserts personal jurisdiction based on coordinated actions between Ferreira and Helm Home, which all took place in Utah, claiming that "Helm conspired and coordinated with Ferreira knowing that Butera, BBD, and BBI were all based in California." (Compl. ¶ 11.) Prior to the Supreme Court's holding in *Walden v. Fiore*, 571 U.S. 1115 (2014), the Ninth Circuit held that a theory of "individualized targeting" was sufficient to satisfy the express aiming requirement. *Wash. Shoe Co. v. A-Z Sporting Goods, Inc.*, 704 F.3d 668, 675 (9th Cir. 2012). But in *Walden*, the Supreme Court held that "[a] forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the

---

[2] The Court does not address the allegations relating to the country club located in Utah as Plaintiff has offered no basis upon which those could be relevant to establishing specific personal jurisdiction in California.

necessary contacts with the forum." 571 U.S. at 286. The Ninth Circuit has since stated that "[f]ollowing *Walden*, we now hold while a theory of individualized targeting may remain relevant to the minimum contacts inquiry, it will not, on its own, support the exercise of specific jurisdiction, absent compliance with what *Walden* requires." *Axiom Foods, Inc. v. Acerchem Int'l*, 874 F.3d 1064, 1069 (9th Cir. 2017). After *Walden*, courts "must look to the defendant's 'own contacts' with the forum, not to the defendant's knowledge of a plaintiff's connections to a forum." *Id.* at 1070. Therefore, Plaintiffs' "ability to demonstrate that Defendants knew [their] principal place of business was in California" and engaged in the alleged conduct "cannot alone establish personal jurisdiction or satisfy the expressly aiming prong." *See Entrepreneur Media, Inc. v. Rugged Entrepreneur*, 2021 WL 4497891, at *4–5 (C.D. Cal. July 14, 2021); *see also Talavera Hair Prod., Inc. v. Taizhou Yunsung Elec. Appliance Co.*, 2021 WL 3493094, at *8 (S.D. Cal. Aug. 6, 2021) ("[A]llegations—which focus on Plaintiff's, rather than the Defaulted Defendants', contacts with California—are inadequate, standing on their own, to establish the second minimum contacts requirement."); *Theos Med. Sys., Inc. v. Nytone Med. Prod., Inc.*, 2020 WL 500511, at *7 (N.D. Cal. Jan. 31, 2020), *report and recommendation adopted*, 2020 WL 9422393 (N.D. Cal. Feb. 27, 2020) ("[I]nfringement of a plaintiff's intellectual property rights with knowledge that plaintiff's operations are based in the forum and that the harm will be felt there, is insufficient to establish personal jurisdiction without a further showing that the defendant otherwise expressly aimed its activities at the forum."); *Kellytoy Worldwide, Inc. v. Jay at Play Int'l Hong Kong Ltd.*, 2019 WL 8064196, at *5 (C.D. Cal. Dec. 5, 2019) ("[The defendant's] purported knowledge of Plaintiff's California connections cannot establish jurisdiction. The mere assertion that an alleged injury will be felt in California is insufficient post-*Walden*.").

In sum, Plaintiffs have not established that there is either general or specific jurisdiction over Defendant in California. Plaintiffs have not shown that Defendants have "continuous and systematic general business contacts," *Helicopteros,* 466 U.S. at

416, such that they can be sued here for any act they have committed anywhere in the world. And while Plaintiffs may have made out a prima facie case that Defendants committed intentional acts that have caused harm to Plaintiffs in California, they have not made a prima facie case that Defendants expressly aimed those acts at California.[3] Because Plaintiffs have not satisfied all three parts of the *Calder* effects test, they have not shown that Defendants purposefully directed their conduct at California.[4]

---

[3] Because Plaintiffs "ha[ve] failed to sustain [their] burden with respect to the second part of the *Calder* effects test, [the Court] need not . . . reach the third part of the test." *Schwarzenegger*, 374 F.3d at 807 n. 1.

[4] Similarly, because Plaintiffs have failed to make even a prima facie showing of the first prong of the specific jurisdiction test, the Court need not analyze the second and third prongs of the test. *See CollegeSource*, 653 F.3d at 1076 (explaining that the plaintiff has the burden to prove the first two prongs of the Ninth Circuit's three-part personal jurisdiction test).

### C. Transfer to the District of Utah

Plaintiffs request that if the Court finds it lacks jurisdiction over Defendants the Court should transfer the case to the United States District Court for the District of Utah, which is the District where Defendants reside. (Opp. at 4–8.) Ferreira agrees, "the interest of justice is best served by transferring this case to the United States District Court for the District of Utah." (Ferreira Mot. at 8.) Helm Home "recognizes that this Court has the authority to transfer the matter" but urges the Court dismiss it from the matter rather than grant transfer. (Dkt. 29 [Reply] at 4.) If a "court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed . . . ." 28 U.S.C. § 1631. "In general, this circuit has taken a broad view of when transfer is appropriate, recognizing that '[n]ormally transfer will be in the interest of justice because normally dismissal of an action that could be brought elsewhere is time-consuming and justice-defeating.'" *Amity Rubberized Pen Co. v. Mkt. Quest Grp. Inc.*, 793 F.3d 991, 996 (9th Cir. 2015) (quoting *Miller v. Hambrick*, 905 F.2d 259, 262 (9th Cir. 1990) (internal quotations and citation omitted))). "[T]ransfer will generally be in the interest of justice, unless it is apparent that the matter to be transferred is frivolous or was filed in bad faith." *Id*.

Transfer is appropriate. No parties seem to dispute that this case could have been filed in the District of Utah, where all Defendants reside. Helm Home references a dispute "regarding the parties' attempts to resolve the matter without Court intervention," (Reply at 2–3), but the Court does not find that sufficient to overcome the presumption that dismissal of an action that could be brought elsewhere is "time-consuming and justice-defeating." *See Amity Rubberized Pen Co. v. Mkt. Quest Grp. Inc.*, 793 F.3d at 996; *see also Elson v. Black*, 2019 WL 4673211, at *8 (C.D. Cal. Sept. 25, 2019)

(transferring case in the interest of justice); *Bruni Media, LLC v. AAPM Media Grp., LLC*, 2018 WL 7448916, at *5 (C.D. Cal. Dec. 4, 2018) (same).

## IV. CONCLUSION

Defendants' motions are **GRANTED IN PART** to the extent they challenge personal jurisdiction but, in the interests of justice, this action is **TRANSFERRED** to the United States District Court for the District of Utah in lieu of dismissal. Defendants' motions are **DENIED AS MOOT** in their other respects.

DATED: September 14, 2023

_____
CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE